Filed 5/21/26  P. v. Guy CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>WILLIAM JAMES GUY,<br><br>    Defendant and Appellant. | D087606<br><br><br>(Super. Ct. No. FSB20002681) |

APPEAL from a judgment of the Superior Court of San Bernardino, Cheryl C. Kersey, Judge.  Affirmed in part, reversed in part, remanded for resentencing.

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Robin Urbanski, Donald W. Ostertag, Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.

William James Guy appeals from a judgment imposed after a jury convicted him of first-degree murder and found true related firearm

enhancement allegations. He contends that: (1) the trial court violated Code of Civil Procedure[1] section 231.7 by overruling his objection to the prosecutor's peremptory challenges against two Hispanic female prospective jurors during jury selection; and (2) the court erred by finding true and relying on aggravating circumstances at sentencing without any waiver of the right to jury trial. We reject Guy's first contention but accept the Attorney General's concession as to the second. We therefore reverse the sentence, remand for resentencing, and otherwise affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the underlying offense are not relevant to the issues Guy raises on appeal. We therefore include only a brief summary of the trial evidence.

On August 5, 2020, around 11:00 p.m., Dylan Moi's body was discovered at an intersection near Guy's residence in Mentone, San Bernardino. Moi had suffered a gunshot wound to his left hip and another fatal gunshot wound to his head. There was methamphetamine and amphetamine in his system. He had a pocket knife in his shorts.

The day after the shooting, a friend of Guy's asked him about it. Guy said he shot somebody in self-defense. He said he was in his yard when the person climbed over his fence and came at him with a knife. Guy felt compelled to draw his firearm and shoot him three times. After this conversation, Guy's friend contacted law enforcement.

Law enforcement arrested and interviewed Guy. After initially denying involvement, Guy admitted shooting Moi. He explained that Moi

---

[1] All further undesignated statutory references are to the Code of Civil Procedure.

2

started yelling and screaming and then took out a knife and rushed towards him. As Moi rushed towards him with the knife, Guy shot him two or three times. Guy felt he had no choice but to shoot Moi. During the interview, Guy wrote an apology letter saying, "I apologize for the crime I've committed. I feel so sick with myself and can't sleep."

A jury found Guy guilty of first degree murder (Pen. Code, § 187, subd. (a)) and found true allegations that he personally used a firearm (*Id.*, §§ 12022.5, subd. (a), 12022.53, subd. (b)), personally and intentionally discharged a firearm (*Id.*, § 12022.53, subd. (c)), and personally and intentionally discharged a firearm causing great bodily injury and death (*Id.*, subd. (d)).

The trial court sentenced Guy to 50 years to life in state prison, calculated as follows: 25 years to life for the first degree murder; a consecutive term of 25 years to life for the firearm enhancement under Penal Code section 12022.53, subdivision (d); a stayed upper term sentence of 10 years for the firearm enhancement under Penal Code section 12022.5, subdivision (a); and stayed terms of 10 years and 20 years for the firearm enhancements under Penal Code section 12022.53, subdivisions (b) and (c).

DISCUSSION

I

Guy contends the trial court violated section 231.7 by overruling his objection to the prosecutor's peremptory challenges against Hispanic female Prospective Juror Nos. 28 and 26 during jury selection. We provide additional factual and legal background before addressing the merits of Guy's arguments.

3

A. *Voir Dire of Prospective Juror No. 28*

After the court seated the first group of 12 prospective jurors in the jury box, the court and counsel conducted voir dire of this initial group. Prospective Juror Nos. 28 and 26 were both in this group. The court first conducted voir dire of each of these 12 prospective jurors individually, then the parties each conducted voir dire of this panel.

During the court's initial questioning, Prospective Juror No. 28, a Hispanic female, stated that she "work[ed] for Los Angeles County Office of Education with incarcerated youth in a mental health camp." She said she was married, her husband owned a construction business, she had served on a civil jury about 15 years before, and she had no family or friends who were in law enforcement or were charged with a crime. When the court asked whether she could "be fair and impartial on everything," she responded, "I believe I can."

Regarding her employment, the court asked, "because of the area working with juveniles in mental health treatment, do you have a degree in psychology or social work?" Prospective Juror No. 28 responded that she did not. She explained that she "work[ed] in the classroom" as "staff support." She received continuous training in mental health issues but did not do any diagnostic work.

Defense counsel began his voir dire of this panel by asking the jurors, "what was the first thought that came to your mind" upon hearing that his client was charged with murder. One prospective juror volunteered, "He's young." Another said, "I thought he was young and sad." A third stated: "Same. I saw him, and he was very young, and it was pretty sad." Prospective Juror No. 28 answered: "I was thinking, being with a mental

4

health background, that he had any issues at the time that maybe he was going through."

During the prosecutor's voir dire, he stated, "A few of you brought up this morning your observation of how the defendant appears young. I expect the evidence in this case will show the victim was young." The prosecutor asked, "Can you think of any reason why the defendant's appearance and his young age, as well as the victim's young age, would impact your ability to return a verdict?" After asking another prospective juror, the prosecutor turned to Prospective Juror No. 28 and asked, "How about you, ma'am . . . is there any reason why you think your work experience -- actually noticed when you mentioned your employment that I think you looked over at me. Was there a reason for that?" She responded, "No." The prosecutor followed up by asking, "do you feel that your employment could impact your ability to return a guilty verdict in this case?" She said, "No."

The prosecutor later addressed Prospective Juror No. 28 again regarding "a topic [she] brought up this morning about mental health issues." He asked: "[W]ould you agree with me a murder is an inherently irrational act? Taking someone's life, unless done in absolute self-defense, generally would not be justified." She agreed. The prosecutor asked, "You had questions – you kind of [had] a reaction wondering if there [were] mental health aspects, right?" She responded in the affirmative. The prosecutor stated that he did not "expect there's going to be mental health evidence in this case" but asked the prospective juror whether she would "want to know the answers to those questions?" She responded, "Not at all. Only what's presented to make our decision."

The prosecutor inquired further about Prospective Juror No. 28's employment and the "types of things" she did. She responded that for seven

5

years, she had "worked with incarcerated youth at a camp" that was "a mental health facility." She "support[ed] them in the classroom, with their programs, [and] their education." If they struggled with reading, she conducted after-school tutoring. She stated that the juveniles "have already been sentenced, and they're at camp pending to be sent out, whether they go to foster care because we service a lot of homeless students." The prosecutor asked about what types of charges the juveniles faced, and she responded: "Some of them, they don't tell us. Some we find out. Some of the students let us know. But that doesn't discourage me or any service provided to them is part of my job, not what they did or why they're there."

B. *Voir Dire of Prospective Juror No. 26*

In response to the court's initial questioning, Prospective Juror No. 26, a Hispanic female, said that she lived in both Colton and Big Bear Lake, was not married, and did not attend school. She helped her mother clean Airbnb rental properties full-time in Big Bear. She had never served on a jury, did not know anyone who was in law enforcement or was a victim of a crime, and had no issues with transportation. She believed her stepfather "got in an argument with an officer, but that was a really long time ago, so I don't know anything about that." She indicated that she "think[s] [she] can be fair."

The court addressed Prospective Juror No. 26 about her youth: "Here is a question, because the attorneys are going to ask you this. So you're clearly younger than everybody else sitting next to you." The court continued: "Once you're in jury duty, sometimes people get really – they try to be persuasive and show anger and they might, you know, be overbearing to you." The court then asked whether she would be able to "stand [her] ground." Prospective Juror No. 26 responded, "I think so."

6

The court explained: "So I want you to listen to everybody, just like everybody, you're all ordered to listen to each other, but I don't want you to give in because you don't have as much life experience, right? Because you're all going to look at the same witnesses and see the same exhibits, you're all going to get the same instructions on the law, and your vote regarding the case is very important to the system and the attorneys. Okay? And that would be one of the things is that if you don't have a lot [of] time and experience working in a group, for instance, or on the job and, you know, like running a business like some of the other people, sometimes your confidence isn't as strong. But I still need you to hold your ground." Prospective Juror No. 26 responded, "If it helps, I was group leader in projects for school." The court replied, "It does help. It will help you sitting as a juror. So very good. Thank you. So we're going to keep you."

Defense counsel asked Prospective Juror No. 26: "If you felt that you were in immediate or in imminent [peril] of being harmed by someone, would you protect yourself?" She started responding with, "I think it's basic instinct —" before she was interrupted by defense counsel, who said, "Your voice is very soft. I wear hearing aids, so I don't always hear soft voices. If you could use the microphone, please." She then responded, "I think it's basic human instinct, yes."

Defense counsel also asked the jurors whether "any of you [have] ever been afraid because you thought you might – you were either in trouble or might be in trouble?" One prospective juror responded, "I guess, yes. When you see a cop car behind you, you wonder what you did wrong." When defense counsel asked Prospective Juror No. 26, she responded, "Yes. I basically stop breathing every time I see a cop car."

C. *Defense Objection to Prosecutor's Peremptory Challenges*

After voir dire of the first group of 12 prospective jurors, both sides passed for cause and the parties began exercising peremptory challenges.

The prosecutor exercised his first peremptory challenge against a Hispanic male, his second peremptory challenge against a White male, his third peremptory challenge against Prospective Juror No. 28, his fourth peremptory challenge against a White female, and his fifth peremptory challenge against Prospective Juror No. 26.

After the prosecutor's third peremptory challenge to Prospective Juror No. 28, defense counsel asked to approach and the court held a bench conference off the record. After the prosecutor's fifth peremptory challenge to Prospective Juror No. 26, defense counsel objected "under the RJA [Racial Justice Act]" as to the peremptory challenges against Prospective Juror Nos. 28 and 26.[2] Defense counsel stated that Guy is Hispanic. The court noted, "He indicate[d] he also has some black and Indian." Guy confirmed that he was "mixed race." The court stated that Guy "doesn't clearly res[o]nate, at least to the Court, with one nationality or another, specifically. So I think that's fair – a fair assessment. The two jurors that you have

---

2      Although section 231.7 is technically not part of the Racial Justice Act (Pen. Code, §§ 745, 1473, subd. (e)), the statutes are closely related and the record reflects that the prosecutor and the trial court understood defense counsel was asserting an objection under section 231.7. (See *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 896 [noting that section 231.7 and the Racial Justice Act were enacted "in the same 2019-2020 legislative session" and "section 3 of the Racial Justice Act contained a provision that was similar to section 231.7 and would have become operative only if section 231.7 had not been enacted into law in the same session"].)

challenged . . . were clearly Hispanic females."  The prosecutor agreed that Prospective Juror Nos. 28 and 26 were Hispanic females.

The court asked the prosecutor, "Would you like to respond to your exercise of peremptory challenge[s] for Juror 28 and 26?"  The prosecutor responded by stating that Guy had "self-identifie[d] as African-American or black" in his police interview, so he believed that Guy "was of mixed race, primarily of African American descent."  The prosecutor also mentioned that the victim was a Pacific Islander and that the "witnesses in this case are all of mixed races."  Referring to "the non-exclusive statutory list in [section] 231.7, whether the objecting party, victim, or witness is of the same perceived cognizable group as the excused juror," the prosecutor argued that "race would not be a factor in this case" and that "the two exercised peremptories of Hispanic females" did not "have any bearing on the facts."

The prosecutor further explained that this was not a case that involved race or gender.  Rather, this was "a homicide case in which the defendant murdered the victim without any knowledge of what the victim looked like and without any knowledge of who the victim was."  He stated: "There's no evidence to suggest that the case was racially motivated.  And based on the wide variety of ethnic and socioeconomic backgrounds of the witnesses involved, there's no evidence to suggest that race, gender, or any other cognizable issue would ever come up in this case."

The prosecutor turned to "whether there were valid reasons for excusing the jurors."  Regarding Prospective Juror No. 26, he argued that there were "numerous race-neutral justifications for exercising a peremptory challenge."  Specifically, he explained he excused this prospective juror because she "ha[d] very limited life experience," was "single, ha[d] no children, relatively few ties to the community, [and] no prior jury experience."

9

The prosecutor added: "I think when the Court was questioning her, you know, I think the Court even had questions about whether she would be able to make it to court. She was also soft spoken, as the Court will recall."

The prosecutor then made a record "[w]ith respect to the number of Hispanic females that continue to appear in the venire" and noted that there were two Hispanic female prospective jurors in the jury box. The prosecutor also mentioned that "[t]here [were] several other individuals who appear to be of Hispanic descent in the jury" and that "everyone remaining in the prospective jury venire appears to me to be of Hispanic or Latin descent."

Defense counsel challenged the prosecutor's justifications regarding Prospective Juror No. 26. Defense counsel argued that the prospective juror "was able to indicate to the Court that she [held] certain [leadership positions for group projects] in high school." He also stated: "When I engaged in her cross-examination, she was very responsive. She was not meek at all. And the reasons that Counsel is giving are not reasons that would normally be given as to whether or not a juror can be fair. It's clear he has a history. Now he's going down, and he's very early in his peremptories, but he's showing, clearly, that he don't like Hispanic females . . . . And the fact that he perceives they're not of the – my client's race is irrelevant."

The court began to rule on defense counsel's objection as follows:

> "All right. Well, as you both know, I'm not, of course, familiar with the witnesses or any racial issues that may come up during the trial. But what is clear is that the venire as a whole has a significant number of Hispanic females and males in the group. And, also, as I've noticed previously, the jury panels that the Court sees generally on a regular basis are ones that have a great deal of diversity. This one is no exception to that.

10

"So there are two other Hispanic females in the jury box at this point, and I would not – I would not be surprised if a peremptory challenge was exercised to excuse both of them for various reasons that have been stated in their responses. With that said, I would really prefer not to go through a challenge, a Wheeler-Batson challenge, every time we have an exercise of peremptory since it appears that the panel is overwhelming[ly] Hispanic, which is back to the other issue is that your client is mixed race, but does not look or appear primarily Hispanic. He does more look and appear to be a light-skinned black male.

"With that being said, there's an issue for the Court in that if minorities, generally, are being excluded, the party excluding those minorities must have a race-neutral reason for that challenge. And the Court has listened to [the prosecutor] and his reasons for the challenge, as to juror – starting with Juror No. 28, which --"

The prosecutor then interrupted the court by saying, "I don't think we have a clear record with respect to 28 yet. I know we had an off-the-record conversation briefly about it." The court told the prosecutor, "Go ahead and make your record." The prosecutor stated that he had initially "contemplated" exercising a for-cause challenge against Prospective Juror No. 28 based on "her direct work with individuals who are incarcerated with mental health issues." He then explained that he exercised the peremptory challenge because the prospective juror's "first reaction upon hearing the charges was not whether – what evidence was at issue, it was whether the defendant had any mental health issues." The prosecutor argued that Prospective Juror No. 28 "appeared to be potentially biased against [the] prosecution based on her initial response to the questions that were asked." The prosecutor also reiterated that race would not be an issue in this case, there was no evidence to suggest "that a racial aspect factored into [his]

11

exercise of a peremptory challenge in this case," and "there's no reason to believe that an objectively reasonable person would view a rationale as related to either prospective jurors' racial background."

Defense counsel responded that "the Racial Justice Act does not contemplate how many – what the venire panel is made of and how many – how many Hispanic people and people of an identified race are there." He also argued that "[t]he prosecutor is showing a clear pattern of rejecting, at this time, female Hispanics that otherwise seem neutral to me. And the fact that there are other Hispanics on the jury panel is irrelevant. But he has this pattern of excusing people, and it appears that for no other reason than their race."

The court responded:

"Hold on a second. I don't think you can really say that, because right now we have six jurors in the jury box, and only one of those, that I can think about, which is the juror sitting in Chair 8, is Caucasian. Everybody else is Hispanic. So let's – you know, let's be mindful that your client is not Hispanic, and the majority of jurors that have been called into the courtroom are Hispanic. So the majority of peremptory challenges are going to be to strike Hispanic jurors.

"So that being said, though, I understand that you believe that you made a prima facie case. The Court disagrees with you in that the challenge of two individuals in a very diverse panel is not sufficient for a prima facie showing. However, the race-neutral reasons for the challenges that have been given by [the prosecutor], the Court finds those to be satisfactory."

Regarding Prospective Juror No. 28, the court made the following findings:

12

"[Prospective Juror No. 28] stated that she was – worked in mental health for juveniles. The issue before the panel is how young your client appears and how sympathetic some of those jurors are toward your client. She also stated she's staff support, so she's in a supportive capacity for mental health or mentally ill juveniles. And it appears from her answers that she may be overly sympathetic towards your client, which gives rise to the challenge exercised by the People as to, potentially, internal bias."

Regarding Prospective Juror No. 26, the court made the following findings:

"[Prospective Juror No. 26 was a] Hispanic female who lived in two places, which didn't make a lot of sense to the Court, because she works a lot in Big Bear, but now lives in Colton and goes back and forth. I'm not sure what exactly she does except cleaning Airbnbs with her mother. She has no jury experience, no law enforcement experience, no friends or relatives in law enforcement. So it appeared, even though she was questioned, that she was very immature and was not seeking any higher education since graduation. Her age appeared to be 18, maybe 19 at the most. So the exercise of a challenge due to her immaturity appears to be appropriate and also race-neutral in this case."

The prosecutor noted that his first peremptory challenge had been to a Hispanic male and his second to "a white male that was similarly young and inexperienced and had no life experience." The court further observed that the prosecutor exercised another peremptory challenge against a White female. The court concluded that out of five total peremptory challenges by the prosecutor, two were exercised against Hispanic females. The court then denied without prejudice defense counsel's objection to the prosecutor's exercise of the peremptory challenges "under section 231.7."

13

D. *Governing Law*

Before January 1, 2022, courts analyzed objections to allegedly discriminatory peremptory challenges solely under the three-step inquiry established by *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258.  In the first step of the *Batson*/*Wheeler* inquiry, the objecting party must establish a prima facie case by showing that the totality of circumstances gives rise to an inference of discriminatory purpose.  (*People v. Jimenez* (2024) 99 Cal.App.5th 534, 548 (*Jimenez*).)  In the second step, the burden shifts to the other party to offer race-neutral justifications for the peremptory challenges.  (*Ibid*.)  In the third step, the trial court must decide whether the objecting party has proven purposeful discrimination.  (*Id*. at p. 549.)

"Recognizing the limitations of the *Batson*/*Wheeler* inquiry," the Legislature enacted section 231.7, "which creates new procedures for identifying unlawful discrimination in the use of peremptory challenges." (*People v. Jaime* (2023) 91 Cal.App.5th 941, 943.)  "Under section 231.7, the party objecting to the peremptory challenge is no longer required to make a prima facie showing of racial discrimination." (*Ibid*.)  Instead, upon objection, the party exercising the peremptory challenge must always state the reasons for exercising the challenge.  (§ 231.7, subd. (c).)  The court must then "evaluate the reasons given . . . in light of the totality of circumstances" and sustain the objection if "there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, as a factor in the use of the peremptory challenge . . . ." (*Id*., subd. (d)(1).)  "The court need not find purposeful discrimination to sustain the objection." (*Ibid*.)  The statute

14

defines an "objectively reasonable person" as someone who is aware of "unconscious bias," which "includes implicit and institutional biases." (*Id.*, subds. (d)(2)(A), (C).) The statute lists a variety of factors the court may consider in making the totality of circumstances determination. (*Id.*, subd. (d)(3).)

Certain specified reasons for a peremptory challenge are defined as presumptively invalid under section 231.7, and the presumption may only be rebutted by clear and convincing evidence that those reasons are unrelated to the prospective juror's perceived membership in a protected group and have a bearing on the juror's ability to be fair and impartial. (§ 231.7, subd. (e).) As relevant to Guy's contentions on appeal, these presumptively invalid reasons include "[h]aving a close relationship with people who have been stopped, arrested, or convicted of a crime" (*Id.*, subd. (e)(3)) or "[e]mployment in a field that . . . serves a population disproportionately comprised of members" of a protected group. (*Id.*, subd. (e)(10).)

The trial court's denial of an objection under section 231.7 must be "reviewed by the appellate court de novo, with the trial court's express factual findings reviewed for substantial evidence." (§ 231.7, subd. (j).) The reviewing court "shall not impute" any findings that the trial court "did not expressly state on the record." (*Ibid.*) "The reviewing court shall consider only reasons actually given" by the party exercising the peremptory challenge "and shall not speculate as to or consider reasons that were not given to explain . . . the party's use of the peremptory challenge." (*Ibid.*) If the appellate court concludes "that the objection was erroneously denied, that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Ibid.*)

E. *Analysis*

Guy first contends that the prosecutor's stated reasons for excusing Prospective Juror No. 28 were presumptively invalid under section 231.7, subdivisions (e)(3) and (e)(10).  The Attorney General argues Guy forfeited this claim by not arguing that these reasons were presumptively invalid in the trial court.  As this court has explained in rejecting a similar claim of forfeiture, however, once an objection to a peremptory challenge has been made and the reasons for the challenge stated, " '[i]t is then up to the trial court to correctly apply the procedure set forth in section 231.7 when deciding whether to sustain the objection' [citation], *and this includes determining whether the proffered reason is presumptively invalid.*"  (*People v. Aguilar* (2026) 117 Cal.App.5th 845, 854, fn. 7, italics added.)  We therefore find no forfeiture.

Based on our de novo review (§ 231.7, subd. (j)), we nevertheless conclude that the prosecutor's stated reasons for excusing Prospective Juror No. 28 were not presumptively invalid.  The prosecutor explained that he had "contemplated" exercising a for-cause challenge against Prospective Juror No. 28 based on "her direct work with individuals who are incarcerated with mental health issues," but he did not identify this as the reason for the *peremptory* challenge.  The prosecutor explained that he exercised the peremptory challenge because this prospective juror's "first reaction upon hearing the charges was not whether – what evidence was at issue, it was whether the defendant had any mental health issues" and she "appeared to be potentially biased against [the] prosecution based on her initial response to the questions that were asked."  The prosecutor was clearly referring to the answer Prospective Juror No. 28 gave when defense counsel asked the jurors "what was the first thought" that came to mind upon hearing that Guy

16

was charged with murder, and she responded, "I was thinking, being with a mental health background, that he had any issues at the time that maybe he was going through."

This was not a presumptively invalid reason under either of the subdivisions cited by Guy. It was not based on Prospective Juror No. 28's "close relationship" with anyone who was stopped, arrested, or convicted of a crime (§ 231.7, subd. (e)(3)) and it was not based on her "[e]mployment in a field that . . . serves a population disproportionately comprised of members" of a protected group. (*Id*., subd. (e)(10).) Rather, it was based on a specific response she gave during voir dire which reasonably suggested to the prosecutor that she would be less inclined to convict based on her mental health background and the fact that her "first thought" upon learning Guy was charged with murder was that he may have been going through mental health issues at the time. As the trial court concluded, "it appears from her answers that she may be overly sympathetic towards [Guy], which gives rise to the challenge exercised by the People" due to her potential bias. Accordingly, we reject Guy's contention that the reasons given by the prosecutor for excluding Prospective Juror No. 28 were presumptively invalid.[3]

---

[3]   Even if the prosecutor had cited Prospective Juror No. 28's employment as a reason for the peremptory challenge, as opposed to a potential challenge for cause, the record still does not reflect that she had a "close relationship" with her students (§ 231.7, subd. (e)(3)) or that her "field" of employment "serves a population disproportionately comprised of members" of a protected group. (*Id*., subd. (e)(10).) These questions were not explored with her during voir dire.

As for Prospective Juror No. 26, Guy argues that the record does not support the prosecutor's stated reasons for excusing her. We disagree. The prosecutor's stated reasons were that Prospective Juror No. 26 "ha[d] very limited life experience," was "single, ha[d] no children, relatively few ties to the community, [and] no prior jury experience." The prosecutor also noted that "the Court even had questions about whether she would be able to make it to court" and "[s]he was also soft spoken, as the Court will recall."[4] These reasons are amply supported by the record, including Juror No. 26's own statements and the trial court's observation that she appeared to be only about 18 or 19 years old. Contrary to Guy's suggestion, nothing in the record suggests the prosecutor exercised this peremptory challenge because Prospective Juror No. 26 gave confusing answers. Moreover, this is not a case like *People v. Uriostegui* (2024) 101 Cal.App.5th 271, in which the prosecutor's assertion that a prospective juror lacked life experience "was based in part on the presumptively invalid reason of 'lack of employment or underemployment.'" (*Id*. at p. 280 [quoting § 231.7, subd. (e)(11).) Guy makes no similar claim that the peremptory challenge against Juror No. 26 was based on lack of employment or underemployment, nor did the prosecutor make any such suggestion.

In his reply brief, Guy argues for the first time that exclusion of jurors based on their youth is prohibited under section 231.5.[5] Guy has forfeited

---

[4] Guy does not contend that being soft-spoken is a presumptively invalid "demeanor" reason under section 231.7, subdivision (g)(1)(B).

[5] Section 231.5 provides: "A party shall not use a peremptory challenge to remove a prospective juror on the basis of an assumption that the prospective juror is biased merely because of a characteristic listed or defined in Section 11135 of the Government Code, or similar grounds." The cross-

18

this claim by failing to raise it in the opening brief.  (*People v. Lee* (2023) 95 Cal.App.5th 1164, 1190 (*Lee*).)  In any event, excluding a juror based on youth does not violate section 231.5 or 231.7.  (*People v. Hernandez* (2025) 115 Cal.App.5th 256, 265–266.)  Section 231.5 "prohibits age discrimination in jury selection against persons age 40 or older but not those under age 25." (*Id*. at p. 266.)  Moreover, "[y]oung people are not included in the groups encompassed by section 231.7."  (*Ibid*.)  " 'A potential juror's youth and apparent immaturity are race-neutral reasons that can support a peremptory challenge.' "  (*Id*. at p. 265.)

Finally, even though the reasons given by the prosecutor were valid and supported by the record, section 231.7 still requires the court to evaluate "the totality of circumstances" to determine whether "there is a substantial likelihood that an objectively reasonable person would view" race or gender "as a factor in the use of the peremptory challenge . . . ."  (§ 231.7, subd. (d)(1).)  In this context, "a 'substantial likelihood' means more than a mere possibility but less than a standard of more likely than not."  (*Id*., subd. (d)(2)(B).)  We make this totality of the circumstances evaluation taking into account all relevant factors, including those listed in subdivision (d)(3).  (See

---

referenced section prohibits discrimination or denial of public benefits based on various categories, including "age."  (Gov. Code, § 11135, subd. (a).)  It further provides, "The protected bases referenced in this section have the same meanings as those terms are defined in [Government Code] Section 12926."  (Gov. Code, § 11135, subd. (c).)  Government Code section 12926, subdivision (b) in turn states: " 'Age' refers to the chronological age of any individual who has *reached a 40th birthday*."  (Italics added.)

*People v. Garcia* (2025) 115 Cal.App.5th 92, 108 (*Garcia*); *Jimenez, supra*, 99 Cal.App.5th at pp. 545–547.)

Based on our independent review of the totality of circumstances, we conclude that an objectively reasonable person would not view race or gender as a factor in these peremptory challenges. The prosecutor's stated reasons for exercising them (i.e., Prospective Juror No. 28's comment about Guy's mental health and Prospective Juror No. 26's own youth and lack of life experience) were not explicitly or implicitly based on race or gender or disproportionately associated with race or gender. (§ 231.7, subd. (d)(3)(E).) These reasons were also supported by the record. (*Id.*, subd. (d)(3)(F).)

The prosecutor questioned Juror No. 28 appropriately regarding her unprompted comment about Guy's mental health, which was a legitimate area of concern. (§ 231.7, subd. (d)(3)(C)(i).) Although the prosecutor did not question Juror No. 26 about her youth and lack of life experience, there was "little need to" because the trial court had already done so. (*Garcia, supra*, 115 Cal.App.5th at p. 108 [prosecutor's failure to question prospective juror about his youth and lack of experience did not suggest these were pretextual reasons "given that [defendant]'s own counsel did so at length"].) Moreover, the prosecutor dismissed another White male prospective juror who "was similarly young and inexperienced and had no life experience" and did so without questioning him about it. (§ 231.7, subd. (d)(3)(C)(iii), (D).) Youth was also a valid concern given Guy's own youthful appearance. Several prospective jurors specifically mentioned how young Guy appeared to be and how "sad" it was, and the trial court commented to defense counsel, "The

20

issue before the panel is how young your client appears and how sympathetic some of those jurors are toward your client."[6]

As for the race and gender of the relevant individuals (§ 231.7, subd. (d)(3)(A)), Guy was a mixed-race male and Prospective Juror Nos. 28 and 26 were both Hispanic females. Although Guy was part Hispanic, he identified himself as African-American or Black in his police interview and the prosecutor believed he was "primarily of African American descent." The trial court confirmed that Guy did not appear to be primarily Hispanic and looked to be a light-skinned Black male. The victim of the homicide was Pacific Islander and the witnesses were all of mixed races. The defense has never disputed the prosecutor's assertions that race had no bearing on the facts of the case to be tried. (§ 231.7, subd. (d)(3)(B).) The defense has also never argued that the prosecutor or his office had a history of discriminatory peremptory challenges. (*Id.*, subd. (d)(3)(G).) Finally, at the time of the section 231.7 objection, five of the six prospective jurors still remaining in the jury box were Hispanic, two of those were Hispanic females, and those remaining in the venire who would take the place of any excused juror appeared to be all or mostly Hispanic.

"[I]n the totality of circumstances, we conclude that there is not a substantial likelihood that an objectively reasonable person would view cognizable group membership as a factor in the prosecutor's peremptory challenge" of Prospective Juror No. 28 or Prospective Juror No. 26. (*Jimenez, supra*, 99 Cal.App.5th at p. 546.) Nothing in the record would suggest to an objectively reasonable person that race or gender was a factor in these

---

6    According to the probation report, Guy was born in July 1999, which made him 23 years old at the time of trial.

21

peremptory challenges or that they were attributable to conscious or unconscious bias. Accordingly, the trial court did not err in overruling defense counsel's objection under section 231.7.[7]

## II

Guy also contends the trial court erred in imposing upper terms on the firearm enhancements based on aggravating circumstances that were not "stipulated to by the defendant" or "found true beyond a reasonable doubt at trial by the jury" or found true by the court after a waiver of the right to jury trial. (Pen. Code, § 1170, subd. (b)(2).) The Attorney General concedes that the trial court erred by finding these aggravating circumstances true at sentencing without a waiver of the right to jury trial, and the court therefore could not lawfully rely on these aggravating factors to impose the upper term

---

[7] Guy does not assert any *Wheeler/Batson* argument apart from his section 231.7 arguments. At least one court has suggested that the failure of a section 231.7 claim necessarily defeats a related constitutional claim under *Wheeler/Batson*. (*People v. Ortiz* (2023) 96 Cal.App.5th 768, 808.) We need not decide this question because the issue has not been raised. Likewise, Guy did not argue in his opening brief that the trial court improperly evaluated his section 231.7 objection using the *Batson/Wheeler* framework. As the Attorney General candidly acknowledges in the respondent's brief, "portions of the record indicate that the trial court may have applied the *Batson/Wheeler* standard," including its references to *Batson/Wheeler* and its finding that Guy had not made a prima facie showing. Because Guy attempted to raise this issue for the first time in his reply brief, it is forfeited. (*Lee, supra*, 95 Cal.App.5th at p. 1190.) Even if it were not forfeited, however, we would find no error in the trial court's ultimate ruling based on our own de novo review of the record properly applying section 231.7. (§ 231.7, subd. (j).) A ruling that is correct under the law will not be disturbed on appeal merely because given for a wrong reason. (*People v. Dawkins* (2014) 230 Cal.App.4th 991, 1004.)

22

of 10 years on the firearm enhancement under Penal Code section 12022.5, subdivision (a). We agree as well.

The information alleged multiple circumstances in aggravation relating to both the crime and Guy. During trial, the parties agreed to bifurcate the trial on the alleged aggravating circumstances. Although defense counsel indicated that Guy intended to waive his right to jury trial on these allegations, it appears this never happened. The record does not include any such waiver or stipulation to any of the aggravating circumstances.

Despite the absence of a jury waiver, the court at sentencing found true multiple of the charged aggravating circumstances. The court also imposed the upper term of 10 years for the Penal Code section 12022.5, subdivision (a) firearm enhancement.[8]

We agree with the parties that the trial court erred by imposing this upper term sentence based on aggravating circumstances that were not "stipulated to by the defendant," "found true beyond a reasonable doubt at trial by the jury," or found true "by the judge in a court trial" after a waiver of the right to jury trial. (§ 1170, subd. (b)(2).) Under the Sixth Amendment, "any fact, beyond the bare fact of a prior conviction, that exposes a defendant to harsher punishment, must be found by a jury beyond a reasonable doubt, unless the defendant stipulates to its truth *or waives a jury trial*." (*People v. Wiley* (2025) 17 Cal.5th 1069, 1084, italics added.)

---

[8] The sentencing triad for this enhancement is three, four, or 10 years. (Pen. Code, § 12022.5, subd. (a).) As the Attorney General notes, the terms the court imposed on the separate Penal Code section 12022.53 firearm enhancements were not upper terms because section 12022.53 prescribes set terms for each of these defined enhancements and does not give the court any discretion to impose a low, middle, or upper term.

We also agree with the Attorney General's concession that this error is prejudicial and requires a remand for resentencing under *People v. Lynch* (2024) 16 Cal.5th 730, 768–769, 775–776. Several of the aggravating circumstances found true by the trial court were based on what the Supreme Court in *Lynch* referred to as "a somewhat vague or subjective standard." (*Id*. at p. 775.) These include that "the crime involved great violence, great bodily harm, and other acts showing a high degree of cruelty, viciousness, and callousness" and that Guy had "engaged in violent conduct that indicates a serious danger to society." Because these aggravating circumstances are inherently subjective and imprecise (*id*. at pp. 775–776), we cannot "conclude beyond a reasonable doubt that a jury would have found true all of the aggravating factors relied upon by the trial court to justify an upper term sentence." (*Id*. at pp. 768–769.) Moreover, the court could not lawfully have imposed the upper term on the Penal Code section 12022.5, subdivision (a) enhancement without proper true findings or a stipulation to the truth of "circumstances in aggravation . . . that justif[ied] the imposition of a term of imprisonment exceeding the middle term." (Pen. Code, § 1170, subd. (b)(2).) We will therefore vacate the sentence and remand for a full resentencing hearing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 [full resentencing on all counts required when part of sentence is stricken on appeal].)

## DISPOSITION

The sentence is reversed and the matter is remanded to the trial court for a full resentencing hearing.  The judgment is otherwise affirmed.


BUCHANAN, Acting P. J.

WE CONCUR:


KELETY, J.


RUBIN, J.